■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EMMANUEL TORRES, Appellant.—Judgment of the Supreme Court, New York County (Stephen G. Crane, J.), rendered August 5, 1985, convicting defendant, upon a jury verdict, of four counts of murder in the second degree, and sentencing him to concurrent terms of 25 years' to life imprisonment, unanimously affirmed.

Defendant was convicted of the stabbing death of Caroline Isenberg in the early morning of December 2, 1984 on the roof of 929 West End Avenue in the County of New York. On the basis of the Court of Appeals 4-to-3 decision in *People v Bartolomeo* (53 NY2d 225), defendant contends that an oral confession, a subsequent written confession and statements made to, and recorded on videotape by, the media while he

was in the presence of the police should have been suppressed on the ground that defendant had been arrested nearly five months earlier on the charge of assault in the second degree and was represented by counsel on that charge. Defendant argues that the police had sufficient notice of this prior arrest to require them to refrain from questioning him.

The hearing court, however, determined that the police had obtained numerous reports from the Bureau of Criminal Investigation on persons connected to 929 West End Avenue for the purpose of obtaining their names, addresses and personal pedigree. During the two-day period of December 4 and December 5, 1984, Detective Al Genova received some 88 pages of documents as a result of requests on 15 individuals, 11 pages of which pertained to defendant. This material included an information sheet showing the July 19, 1984 arrest, without a disposition, and an identification photograph taken at that time. The court further determined that no attempt to digest this information was made, nor was it passed on to the other investigating detectives, numbering about 40 in all. The hearing court took notice of the "notorious" inaccuracy of NYSIIS information sheets, finding that knowledge of the outstanding charge against defendant was not acquired until 3:00 P.M. on December 6, several hours after defendant signed his written confession, when a call was placed to Criminal Court by Detective Genova.

While this matter bears some similarity to *People v Bartolomeo (supra)*, it is readily distinguishable from that case. Here, as in *Bartolomeo (supra)*, it is apparent that defendant was attempting to conceal the fact of his prior arrest in order to avoid suspicion, had received *Miranda (Miranda v Arizona,* 384 US 436) warnings and had affirmatively waived his right to the assistance of counsel. Unlike *Bartolomeo,* however, the detectives who interviewed defendant did not have actual knowledge of the previous arrest. Finally, defendant was not in custody when initially questioned. Defendant was not handcuffed or held under guard, and his arrival at the precinct house, where he was accompanied by his girlfriend, was not entered in the log. Defendant's interview was conducted in the captain's office. In sum, his treatment by detectives is consistent with that accorded a citizen who is assisting a police investigation. We therefore conclude that defendant's initial, oral statement was voluntarily made under noncustodial circumstances in which the police are under no obligation to refrain from questioning a suspect even if they are fully

aware of his representation by counsel on an unrelated charge *(People v Bertolo,* 65 NY2d 111, 116).

*People v McIntyre* (138 AD2d 634), relied upon by defendant, is inapposite. In that case, an initial oral statement was suppressed for failure to apprise the suspect of his *Miranda* rights. In the matter under review, defendant was read the preinterrogation warnings prior to questioning. Moreover, unlike the situation in *McIntyre (supra),* the police involved in this case possessed no evidence to connect defendant with the crime, much less effect his arrest, and the circumstances cannot be said to have been contrived for the purpose of extracting his confession without informing him of his *Miranda* rights (138 AD2d 634, 636, *supra).*

As a result of statements made in the course of his oral confession, the police had sufficient information to arrest defendant for the murder. His written statement, made after defendant again received *Miranda* warnings, was therefore made in a custodial setting. However, without actual knowledge of defendant's representation by counsel or the pendency of charges against him *(People v Smith,* 54 NY2d 954), the police were not required to discontinue questioning him nor to inquire whether he had an attorney *(People v Servidio,* 54 NY2d 951; *People v Bertolo, supra,* at 119). Absent bad faith, which has not been demonstrated in this case, the police are not chargeable with constructive knowledge of defendant's prior arrest and representation by counsel as a result of the mere presence, in the precinct house, of defendant's rap sheet (along with those of at least 25 other possible informants) indicating the July 19, 1984 felony arrest *(People v Bertolo, supra,* at 120). By the same token, the fact that a photograph of defendant shown to some of the investigating officers bore the date of this arrest did not, as defendant argues, serve to impart actual knowledge of the arrest. Although it was made in the same precinct, defendant does not allege that any of the same officers, or even an officer of the same unit, was involved in the previous investigation. These factors, either individually or collectively, bear only circumstantially on defendant's representation by counsel, and unless the police have "acted in bad faith or without sufficient deference to defendant's right to counsel", the information which further investigation might have disclosed is not imputed to the detectives conducting the interrogation *(People v Bertolo, supra,* at 120). Indeed, under the circumstances presented by this case, it would be an anomalous result if defendant, having been successful in concealing the fact of his prior arrest from the police in order

to avert their suspicion, was nevertheless able to use his representation by counsel on that charge to suppress statements made to detectives.

As to defendant's statements to the media, no independent ground is advanced for their suppression. The record contains sufficient evidence to support the conclusion that they were spontaneous and not issued in response to police prompting. We note also that defendant made inculpatory statements to individuals who were held with him at Central Booking, four of whom testified at trial regarding defendant's admissions.

Defendant's other contentions have been examined and found to be without merit. Concur—Kupferman, J. P., Ross, Asch, Kassal and Rubin, JJ.